465 P.2d 348

**Clair R. ROGERS, Plaintiff and Respondent,**

**v.**

**Francis J. Rogers ANDREWS, Defendant and Appellant.**

**No. 11875.**

Supreme Court of Utah.

Feb. 17, 1970.

LaMar Duncan, Salt Lake City, for defendant and appellant.

I. Gordon Huggins, Ogden, for plaintiff and respondent.

HENRIOD, Justice:

Appeal from a judgment modifying a divorce decree. Affirmed, with no costs awarded.

In 1960 the parties hereto were divorced. The custody of two minor sons, then aged about 3 and 1, respectively, was awarded to the defendant mother, subject to right of visitation in plaintiff. Since that time plaintiff has married another woman who had children by a previous marriage and defendant has married another man who brought with him children of a previous marriage.

The parties to date, have filed about as many petitions against each other as they have children and stepchildren in the aggregate. The charges have been as numerous and as confused. Needless to say the plaintiff has suggested that his ex-wife may have been something less than a good mother, and defendant as affectionately has ventured the guess that her ex-mate didn't live right. The exchange of verbal and printed brickbats suggests a case that is par for the course, with a bit of hatred acting as caddy.

The younger boy became 10 and the elder 12, at the time of this most recent skirmish. Through a process of traded accusations, they became the victims or beneficiaries of a modified decree. Mother was to have the children for all the school months, and father during all of the summer vacation months. This gave the boys the exciting and adventurous opportunity twice a year to renew their acquaintance with, affection or distaste for a new assortment of stepbrothers and stepsisters. It also presented father with the opportunity of gathering sufficient candy and condiments to sustain the boys on fishing trips and picnic safaris and provide a possible release from his stint as stepfather, to say nothing of the mother's enjoyment of an uncomfortable hot spell with the other contingent of stepchildren.

From the record, which requires no detailed abstracting here, since it reflects a situation of little more than denial and counter-denial, it appears that this is one of those frequent cases where possibly bewildered or frustrated children apparently are employed as human bullets for the ignoble purpose of allowing a couple of irreconcilable matrimonial combatants to pierce not only their own souls, but those of

their own offspring,—a by-product of another possible mutual abhorrence for one another, and of their unwitting and possibly fatuous payment of homage to delinquency. It appears that the father indulged such irreverent fervor in this case by delivering his sons, after keeping them overtime decreewise, for the purpose of serving their mother with the embarrassing ultimatum that they no longer wished to live with her,—all of which, from the record, one might suspect was accomplished in an aura of coached paternalism. She, on the other hand, may have overreached the bounds of maternal filial affection by having her sons taken into custody by the police and restrained pending the outcome of the encounter between herself and him whose love apparently had been filched by another member of her sex.

Anyway, the judicial referee counted at the knockdowns and declared the bout a sort of Munchausian draw by decreeing, with a despairing wink of the eye, that albeit both contestants were fit and proper persons to have the custody of the boys, the father was to have full custody of the boys save for a rather miserable 27 hours from 6:00 p. m. on Saturday to 9:00 p. m. on Sunday of each week,—an arrangement that defendant did not like because it subjected the boys to the terrible influence of their father six-sevenths of the time,— and stopped the support money,—and which the father didn't like because it would inter-

fere with his membership in a weekend Isaac Walton Association.

Because of the displeasure of both the parties arising out of the modified decree entered by the court, both appealed. The father's pleadings and brief attributed to the trial court the wisdom of Solomon in switching custody to him, but gave the same judge a rather nominal I. Q. rating when he broke up the picnics and fishing trips.

Three other people, not the litigants here, took the real beating in this case,—the two boys and the harassed judge in his alleged robed and wise unwisdom. We believe the trial court, on what he had before him, proved to be a competent physician in attempting to heal the marital malignancy extant here, and that the believable evidence justified and supported both his amputations and plastic surgery.

The trial court's judgment is affirmed and plaintiff's cross-appeal adjudged to be without merit.

TUCKETT and ELLETT, JJ., concur.

CROCKETT, Chief Justice (concurring):

I concur with the decision in refusing to interfere with the order of the trial court. As is reiterated so often, due to his advantaged position and prerogatives, he is and should be allowed considerable latitude of discretion in such matters. Neverthe-

less, in view of the complaint about the rigidity of the order, I think it not amiss to make these comments: It gives custody of the boys to the father *every* weekday, and to the mother part of *every* weekend. The father argues that this breaking into every weekend will always prevent the planning of weekend recreational activities. If applied in absolute rigidity it will also at times adversely affect plans of the mother. The answer to this dilemma perhaps could be found by these parties committing themselves to the idea that the paramount objective should be the welfare and character building of their sons; and that this requires the highest possible degree of love and guidance from both parents in a mature and reasonable way.

It is to be hoped that after passions have subsided, and upon mature reflection, the parties can themselves, or through the intermediary of these boys, now emerging into manhood, arrange at such times as is necessary and desirable an adjustment and tolerance of each other's plans by the trading of custody time, and thus create a much happier situation and have a number of beneficial aspects for all concerned. The trial judge probably had in mind such possibility in fashioning the decree in generality as he did. He appears to have done a commendable job in dealing with one of the most perplexing situations the courts have to deal with: the arrangement of the custody of children between divorced par-

ents who in fact love their children but where there is an atmosphere laden with tensions because rivalry and emotions play too large a part in their contending for custody.

CALLISTER, J., concurs in the result.